# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHON JEFFREY PHILLIPS, | Case No. 1:25-cv-00668-SAB |
| Plaintiff, | ORDER AFFIRMING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY |
| v. | (ECF Nos. 16, 18) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff Jonathon Jeffrey Phillips ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument.

Plaintiff requests the final decision of Commissioner be reversed and the case be remanded for further proceedings, arguing that the decision below was not supported by substantial evidence. Specifically, Plaintiff argues that the Administrative Law Judge ("ALJ") erred by failing to develop the record and in her analysis of Plaintiff's subjective testimony.

For the reasons explained herein, the Court will affirm the decision of the Commissioner.

/ / /

/ / /

1

# I.

## BACKGROUND

### A.    Agency Procedural History

On April 26, 2023, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning July 23, 2015. (ECF No. 13, Administrative Record ("AR"), 15.)  Plaintiff's application was initially denied on August 8, 2023, and denied upon reconsideration on February 23, 2024. (Id.)  Plaintiff requested a hearing before an ALJ.  On January 24, 2025, Plaintiff, represented by counsel, appeared via online video for a hearing in front of an ALJ. (Id.)  Plaintiff and vocation expert ("VE") Gregory S. Jones testified. (Id.)  On February 11, 2025, the ALJ issued a decision concluding that Plaintiff was not disabled. (AR 26-27.)  On April 3, 2025, the Appeals Council denied Plaintiff's request for review. (AR 1-5.)

### B.    The ALJ's Findings of Fact and Conclusions of Law

In the decision, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on September 30, 2020, and he had not engaged in substantial gainful activity during the period from his alleged onset date of July 23, 2015, through his date last insured of September 30, 2020. (AR. 17.)   The ALJ found that Plaintiff had the following severe impairments: post-traumatic stress disorder (PTSD); major depressive disorder; chronic pain disorder; and obesity. (AR 18.)  However, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed in impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 19.)

After considering the entire record, the ALJ found that, through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: Plaintiff must avoid exposure to hazards such as unprotected heights and moving machinery.  He could understand, remember and carry out only simple work instructions.  Plaintiff was limited to only occasional interaction with supervisors and co-workers.  He was limited to no teamwork with co-workers.  Plaintiff was limited to no direct interaction with the public, except incidental or superficial as needed to

complete independent job tasks.  He was limited to only occasional changes to a routine work environment.  Plaintiff could have no more than moderate noise level, as defined by the Selected Characteristics of Occupations.  (AR 21.)

The ALJ then found that Plaintiff had no past relevant work, he was 38 years old, and he had at least a high school education.  (AR 25.)  The ALJ discussed that transferability of job skills was not an issue because the claimant does not have past relevant work.  (Id.)  Through the date last insured, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed.  (Id.)  Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined by the Social Security Act, at any time from July 23, 2015, the alleged onset date, through September 30, 2020, the date last insured.  (AR 26.)

Plaintiff sought timely review of the Commissioner's final decision in the federal courts. (ECF No. 1.)  The parties consented to the jurisdiction of the United States Magistrate Judge. (ECF Nos. 4, 10, 11.)  Thereafter, the parties filed their briefs on the matter.[1]  (ECF Nos. 16, 18.)

## II.

## LEGAL STANDARD

### A.    The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to

---

[1] On December 1, 2022, the Supplemental Rules for Social Security became effective.  Rule 5 states, "[t]he action is presented for decision by the parties' briefs."  Fed. R. Civ. P. Appx. Rule 5.  The 2022 Advisory Committee noted that "Rule 5 states the procedure for presenting for decision on the merits a [42 U.S.C.] § 405(g) review action that is governed by the Supplemental Rules."  Fed. R. Civ. P. Appx. Rule 5 advisory committee note 2022.  Like an appeal, "the briefs present the action for decision on the merits.  This procedure displaces summary judgment or such devices as a joint statement of facts as the means of review on the administrative record."  Id.  The 2022 Advisory Committee unambiguously clarified that "Rule 5 also displaces local rules or practices that are inconsistent with the simplified procedure established by these Supplemental Rules for treating the action as one for review on the administrative record."  Id.  Here, Plaintiff filed a motion for summary judgment, which the Court will construe as a brief in support of his position on whether the Court should affirm, modify, or reverse the decision of the Commissioner.  42 U.S.C. § 405(g).

be used in determining whether a claimant is disabled.  20 C.F.R. § 404.1520;[2]  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).[3]  "[I]t is the responsibility of the ALJ, not the

---

[2] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

[3] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir.

claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001); 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To do this, the ALJ can use either the Medical Vocational Guidelines ("grids") or rely upon the testimony of a VE. See 20 C.F.R. § 404 Subpart P, Appendix 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" Ford, 950 F.3d at 1149, quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

**B.    Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to affirm, modify, or reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court may not disturb the Commissioner's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence. 42 U.S.C. § 405(g); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "[T]he threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019). Rather, "[s]ubstantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Stiffler v. O'Malley, 102 F.4th 1102, 1106 (9th Cir. 2024), quoting Ford, 950 F.3d at 1154. In other words, "[s]ubstantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), quoting Flaten v. Sec'y of

---

1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).

Should the ALJ err, the Court will not reverse where the error was harmless. Stout, 454 F.3d at 1055-56. "An error is harmless only if it is 'inconsequential to the ultimate nondisability determination.'" Leach v. Kijakazi, 70 F.4th 1251, 1255 (9th Cir. 2023), quoting Lambert v. Saul, 980 F.3d 1266, 1278 (9th Cir. 2020). The burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012), quoting Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012), quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Nor may the Court affirm the ALJ on a ground upon which he or she did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). It is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154, quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

### III.

### DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ erred in two ways. First, Plaintiff argues that the ALJ failed to discharge her duty to develop the record as to the medical opinion of L. M. Nile, M.D. (ECF No. 16, pp. 4-6.) Second, Plaintiff generally argues that the ALJ erred in her analysis of Plaintiff's subjective complaints. (Id. at pp. 6-7.) The Commissioner opposes, arguing that substantial evidence supports the ALJ's decision. (ECF No. 14.) The Court agrees with the Commissioner.

### A.   Duty to Develop the Record

"The claimant has the burden of proving that she is disabled." Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996). However, "[t]he ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . even when the

claimant is represented by counsel.'" Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003), quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). "[I]t is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. [The ALJ] must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." Id., quoting Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992). Further, the ALJ's duty to develop the record fully is heightened where the claimant may be mentally ill and thus unable to protect his own interests. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001), citing Higbee, 975 F.2d at 562. "[T]he ALJ's duty to develop the record does not need to be talismanically preserved in the administrative hearing." Labuga v. Commissioner of Social Security, No. 1:24-cv-00890-SAB, 2025 WL 1911690, at *6 (E.D. Cal. July 11, 2025), citing Obrien v. Bisignano, 142 F.4th 687 (9th Cir. 2025).

The Ninth Circuit has explained that ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." Tonapetyan, 242 F.3d at 1150 (quoting Smolen, 80 F.3d at 1288). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Id. (citations omitted). Similarly, the regulations provide the ALJ may order further consultative examination to "resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision." See 20 C.F.R. § 416.919a. Examples of situations under which further developing the record may be required include when the additional evidence needed is not contained in the records of the claimant's medical sources, and when highly technical or specialized medical evidence not available from the claimant's medical sources is needed. 20 C.F.R. § 416.919a(b). Once the duty to further develop the record is triggered, failure to do so constitutes reversible error. See Tonapetyan, 242 F.3d at 1150-51.

As limited by his brief,[4] Plaintiff argues that "the ALJ stated did not set forth the opined

---

[4] Plaintiff does not argue that the ALJ improperly evaluated the persuasiveness of Dr. Nile's opinion.

limitations [by L. M. Nile, M.D.,] in vocationally relevant terms." (ECF No. 16, p. 5.) Thus, Plaintiff reasons that the ALJ "found this opinion ambiguous and therefore had a duty to recontact Dr. Nile." (Id. at p. 6.)

For completeness, the Court quotes the medical opinion of Dr. Nile in full:

> [Plaintiff] is under my professional care at the VA hospital for PTSD (Post-Traumatic Stress Disorder). He is compliant with his appointments and treatment regimen. He struggles with increased, unprovoked irritability and anger, as well as occupational and social impairment due to deficiencies in mood, thinking, family relationships and word.
>
> He struggles with depressed mood, suspiciousness, chronic sleep problems, difficulty adapting to stressful situations, difficulty in adapting to work, increased anxiety and difficultly in establishing and maintaining effective work and social relationships.
>
> In my professional opinion, [Plaintiff] should not work more than 40 hours per week and he may need intermittent periods of time off for stress leave. Thank you.

(AR 582.)

In evaluating the opinion of Dr. Niles, the ALJ found:

> L. M. Nile, M.D., the claimant's own psychiatrist, stated on December 9, 2020, that the claimant should not work more than 40 hours per week and might need intermittent periods of time off for stress leave (Exhibit B1F/232). The undersigned finds that this opinion is not persuasive. "Intermittent periods of time off for stress leave" is not vocationally relevant terms. In addition, this limitation is not supported by this doctor's own treatment notes, which documented generally adequate mental functioning as discussed above (Exhibits B1F and B5F). The undersigned also notes that the ability to work 40 hours per week does not support disability.

(AR 25.)

Plaintiff homes in on the fact that the ALJ found that "intermittent periods of time off for stress leave" was not something assessed in "vocationally relevant terms." Plaintiff equates this to ambiguity. Not so.

Under the regulations, a "medical opinion" is defined as:

> a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities:

(i)   Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

(ii)  Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(iv)  Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513; see 20 C.F.R. § 416.913.

With this background, it is clear that the ALJ was noting that "intermittent periods of time off for stress leave" was not a *medical opinion*, as defined by the regulations, because it did not asses what Plaintiff could still do despite his impairment(s) along with whether (or how) this would affect Plaintiff's ability to perform physical, mental, or other demands at work. (AR 25.) In any event, the ALJ also discussed that this offered *limitation* was not supported by Dr. Nile's own treatment notes, discussed elsewhere in the opinion. (Id.)

Therefore, Plaintiff has misidentified the issue. Though the ALJ is required to review *all* evidence relevant to a claim, 20 C.F.R. §§ 404.1520b, 416.920b, the ALJ is not required to *discuss* all the objective medical evidence in a record (in contrast to being generally required to assess each medical opinion). That said, the ALJ here nonetheless did discuss the limitation offered by Dr. Nile and rejected it as not supported by Dr. Nile's other treatment notes. Indeed, this appears to be the animating force for the ALJ's assessment of Dr. Nile's opinion as "not persuasive." (AR 25.)

In light of the foregoing, the Court is hard-pressed to find that the offered limitation of "intermittent periods of time off for stress leave" was ambiguous (*i.e.*, capable of being understood in two or more possible senses or ways; or difficult to discern or categorize)[5] or created any

---

[5] *Ambiguous*, Merriam-Webster, https://www.merriam-webster.com/dictionary/ambiguous (last visited Mar. 30. 2026).

ambiguity in the record overall. Plaintiff has not otherwise argued how this limitation creates ambiguity.

In sum, the ALJ identified that that "intermittent periods of time off for stress leave" was not a medical opinion but discussed that the offered limitation was nevertheless unpersuasive. The record was not ambiguous or did it create ambiguity, and therefore, the ALJ's duty to develop the record was not triggered. Thus, the ALJ did not err.

**B. Analysis of Plaintiff's Subjective Complaints**

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014), quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). As relevant here, where the ALJ "determines that a claimant . . . is not malingering and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms she alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Lambert, 980 F.3d at 1277, quoting Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015). "Ultimately, the 'clear and convincing' standard requires an ALJ to show his work." Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022). An ALJ must show their work by "identify[ing] the testimony [from a claimant] she or he finds not to be credible and . . . explain[ing] what evidence undermines that testimony." Lambert, 980 F.3d at 1277, quoting Treichler v. Comm. of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014). Boilerplate statements and general summaries of the evidence, without more, are not enough. Id. at 1277-78. That said, an ALJ is not required "to perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." Id. at 1277.

While "an ALJ cannot insist on clear medical evidence to support each part of a claimant's subjective pain testimony when there is no objective testimony evincing otherwise, . . . [w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." Smartt, 53 F.4th at 498 (emphasis in original). Indeed, "[c]ontradiction with the medical record is a sufficient basis for rejecting the

claimant's subjective testimony." Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008). "The standard isn't whether [a] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." Smartt, 53 F4th at 499.

In addition, an ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid," and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014). An ALJ may also consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007). "[T]he ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012), superseded on other grounds by 20 C.F.R. § 404.1502(a). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Id., citing Turner v. Commissioner of Social Sec., 613 F.3d 1217, 1225 (9th Cir. 2010).

In his brief, Plaintiff raises a general argument: "[t]he ALJ in this matter offers no finding or conclusion as to what evidence undermines which portions of Plaintiff's alleged limitations." (ECF No. 16, p. 7.) Thus, Plaintiff reasons that "[t]he ALJ did not properly evaluate the criteria in the regulations or SSR 16-3p, which direct how an ALJ should consider subjective complaints." (Id.)

In the decision, the ALJ summarized Plaintiff's testimony as follows:

> The claimant complained of back pain, anxiety, panic attacks, depression, hypervigilance, suicidal ideation, anger outbursts, social withdrawal, anhedonia, nightmares, and sleep disturbance. Loud noises allegedly exacerbated his mental symptoms. He allegedly had difficulty understanding and remembering information, following instructions, completing tasks, concentrating, being around people, getting along with others, handling stress, and maintaining regular attendance. He allegedly had a couple bad days per month, during which he stayed in bed

11

and isolated himself most of the time (Exhibits B2E, B4E, B12E, B13E, B14E, and hearing testimony).  The claimant's mother and wife provided third-party statements, which largely mirror the claimant's allegations (Exhibits B15E and B16E).

(AR 22.)

Though the ALJ observed that Plaintiff's medically determinable impairments could reasonably be expected to have caused the alleged symptoms, the ALJ found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained below." (Id.)

For Plaintiff physical impairments, the ALJ discussed treatment notes, lack of an assistive device for ambulation, lack of aggressive treatment, Plaintiff's own testimony, and activities of daily living supported only a finding that Plaintiff should be restricted to "simple work and no exposure to hazards."  (AR 22-23.)  For mental impairments, the ALJ discussed that treatment notes, Plaintiff's own testimony, records demonstrating improvement, hospitalizations/ER visits, and activities of daily living supported that Plaintiff had "some mental limitations," as well as restricting Plaintiff "to no exposure or hazards and no more than moderate noise."  (AR 23.) Thereafter, the ALJ gave further analysis that probative evidence post-dated the date of last insured supported further restriction  (AR 23-24.)  The ALJ noted that Plaintiff's obesity may have an adverse impact on Plaintiff's co-existing impairments, sustainability of an 8-hour workday, and may cause or contribute to mental impairments such as depression.  (AR 24.)  The ALJ discussed Plaintiff's "sleep problems, dysphoria, weight pain, blurred vision, sleepiness, drowsiness, restlessness, muscle spasms, tremors, diarrhea, frequent urination, and malaise from the use of medications," finding that these symptoms were not documented in the record as "serious, ongoing concerns from any medical source." (Id.)  Thereafter, the ALJ discussed the persuasiveness of the medical opinions of record.  (AR 24-25.)

Accordingly, the ALJ identified Plaintiff's subjective testimony and then discussed what other evidence undermined the testimony.  Significantly, the ALJ even credited portions of both Plaintiff physical and mental testimony and incorporated these findings into the RFC.  Therefore,

Plaintiff's general argument that the ALJ did not sufficiently give clear and convincing reasons for discounting Plaintiff's testimony is without force.

The Court finds that the ALJ's rationale is clear enough that it has the power to convince. Smartt, 53 F.4th at 499. The ALJ did not err.

## IV.

## CONCLUSION AND ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is AFFIRMED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Jonathon Jeffrey Phillips. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   __**April 14, 2026**__

_____
STANLEY A. BOONE
United States Magistrate Judge

13